UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHOHN WILLIAMS,

    Plaintiff,

        v.

CHICAGO BOARD OF EDUCATION,

    Defendant.

No. 1:24-CV-11729
No. 1:25-CV-06644

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

After Shohn Williams was told that he would be fired from his position as Dean of a Chicago public high school, he resigned. 1:24-cv-11729, R. 20, First Am. Compl. ¶¶ 7, 29–30, 33.[1] He now sues his former employer, the Chicago Board of Education, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. § 623; retaliatory discharge in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615, the Illinois Whistleblower Act, 740 ILCS 174/15, and Illinois common law; violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment; negligent hiring, training, and supervision in violation of the U.S. Constitution and Illinois law; and negligent security in violation of Illinois law. First Am. Compl. ¶¶ 38–105; 1:25-cv-06644, R. 1, ADEA

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Williams brought two cases against the Board related to his resignation. *See* 1:24-cv-11729, R. 34, Def.'s Mot. to Reassign ¶¶ 2–3, 6–7. Because the Court addresses both cases in this Opinion, it includes the relevant case number when citing to the record. Moving forward, the two cases will be consolidated. *See* 1:24-cv-11729, R. 41, 01/07/2026 Order.

Compl. ¶¶ 44–49.[2] The Board moves to dismiss. 1:24-cv-11729, R. 25, Def.'s Mot; 1:25-cv-06644, R. 19, Def.'s ADEA Mot. Because Williams plausibly alleges age discrimination, the motion is denied as to the ADEA claim. But the rest of the claims are dismissed for failure to adequately state a claim, though for now the dismissals are without prejudice.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in Williams's complaints and draws all reasonable inferences in his favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

On February 7, 2024, Williams attended his son's basketball game at a Chicago public cchool (but not the school at which Williams worked). First Am. Compl. ¶ 11. At the game, Williams was physically assaulted by another individual. *Id.* ¶ 12. He suffered head, facial, and eye trauma, causing significant pain, impaired vision, and difficulty sleeping. *Id.* ¶¶ 13, 18. The assault also caused Williams anxiety and emotional distress. *Id.* ¶ 17. He reported the assault to local law enforcement and to the Board. *Id.* ¶¶ 14, 16. And because of his injuries, Williams took leave from his position as Dean of Lindblom High School under the FMLA. *Id.* ¶¶ 7, 20–27.

---

[2]This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

2

Williams returned from leave on May 8, 2024. First Am. Compl. ¶ 27. Upon his return, Williams says (without more specificity) that his work environment "changed," that he was subject to "great scrutiny and animus," and that one time, the police were called to escort him off the property. *Id.* ¶ 28. He also alleges that he was "treated differently than those who took a leave and/or filed a police report." *Id.*

On June 7, 2024, the Board notified Williams that his position was being eliminated due to budget cuts. First Am. Compl. ¶¶ 29–30. Williams asked the principal if there were any other positions for which he could be considered, but he was offered none. ADEA Compl. ¶¶ 31–32. Williams saw a posting for another position at Lindblom "with very similar duties to his former position but with a different title." *Id.* ¶ 33. But the posting was removed before Williams could apply. *Id.* ¶ 34. He later learned that the position was given to two younger individuals with less education and experience than him. *Id.* ¶ 35. Williams continued to search for another job with Chicago Public Schools, but could not find comparable employment. *Id.* ¶ 36. Because he would lose a portion of his retirement benefits if he was involuntarily terminated, Williams submitted a notice of resignation with the Board. *Id.* ¶¶ 38–39. Williams says he resigned only because he would have otherwise been fired. *Id.* ¶ 41.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. ADEA

The ADEA prohibits an employer from discriminating against an individual because of their age. 29 U.S.C. § 623(a)(1). To adequately state a claim for age discrimination under the ADEA, Williams must plausibly allege that he was subject to an adverse employment action because of his age. *See Perry v. Dep't of Hum. Servs.*, 345 F. Supp. 3d 1019, 1026–27 (N.D. Ill. 2018).

### 1. Constructive Discharge

The Board first argues that Williams was not subject to an adverse employment action; instead, he voluntarily resigned. Def.'s ADEA Mot. at 4. Williams responds that he was constructively discharged. 1:25-cv-06644, R. 21, Pl.'s ADEA Resp. Br. at 3–5. "Constructive discharge, like actual discharge, is a materially adverse employment action." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). The Seventh Circuit recognizes two forms of constructive discharge: first, when an employee is forced to resign because discriminatory harassment makes their working conditions intolerable, and second, when an employee resigns after her "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (cleaned up).

Here, Williams adequately pleads the latter form of constructive discharge. He says that the Board notified him that he "would not be returned to his position the following year" and that "due to budget cuts he was being terminated from his

position." ADEA Compl. ¶¶ 29–30. And when Williams searched for other positions at his school, he was offered none. *Id.* ¶¶ 31–36. Williams thus alleges more than a mere "prospect of discharge lurk[ing] in the background," *Chapin*, 621 F.3d at 679 (cleaned up), or even that "the handwriting was on the wall and the axe was about to fall," *Univ. of Chi. Hosps.*, 276 F.3d at 332 (cleaned up). Instead, he was plainly told that his position was being eliminated, which would lead a reasonable employee to believe that they would be fired. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 502 (7th Cir. 2010).

The Board has two unpersuasive responses. First, the Board contends that Williams impermissibly attempts to "amend his complaint through his response brief" because he did not allege constructive discharge in his complaint. R. 22, Def.'s ADEA Reply at 3. But Williams need not use the magic words "constructive discharge" in his complaint, so long as he alleges *facts* that suggest he was constructively discharged—which he does. *See Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014).

Second, the Board argues that Williams does not allege that his working conditions were intolerable, which (the Board says) is required to plead constructive discharge. Def.'s ADEA Reply at 3–4. Some Seventh Circuit cases have stated in passing that both forms of constructive discharge contain a "requirement that the work environment had become intolerable." *Chapin*, 621 F.3d at 679. But a closer look at those cases makes clear that, with the second form of constructive discharge, employees often point to intolerable working conditions as proof that a reasonable employee in

6

their position would have believed that they were about to be fired. *See, e.g., Univ. of Chi. Hosps.*, 276 F.3d at 332 (holding that the plaintiff showed she was about to be fired because "her belongings were packed and her office was being used for storage"; she was warned of an "intent, plan, and attempt to terminate her"; she was subject to hostility about her religious beliefs; and she was told that a particular failure at work was "the last straw"). But if a reasonable person would believe the plaintiff was about to be fired simply because their employer told them so,[4] the plaintiff need not also allege intolerable working conditions. *See Chapin*, 621 F.3d at 680 ("We similarly found a constructive discharge … where it was undisputed by both parties that had the employee not resigned he would have been terminated immediately."). Thus, Williams has adequately pled constructive discharge.

## 2. Causation

The Board argues that even if Williams was constructively discharged, he has not pled facts that suggest he was discharged because of his age. Def.'s ADEA Mot. at 3–4. But Williams alleges that he was qualified for his position and met the Board's legitimate performance expectations. ADEA Compl. ¶ 8. After Williams was told he was being fired because of budget cuts, the school posted another position "with very similar duties to his former position but with a different title." *Id.* ¶ 33. Williams did not have a chance to apply, and he later learned that two younger individuals with less education and experience were given the position. *Id.* ¶¶ 34–35. These

---

[4]Indeed, because the Board told Williams that he would fired, this is more of an actual discharge than a constructive discharge.

allegations raise a plausible inference that Williams was discharged not because of budget cuts, but because of his age—in other words, because the Board wanted to replace him with younger employees. *See Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir. 1999) (holding that an employee can show age discrimination where the employer hires or retains younger employees to fill his position or take on his responsibilities). Williams thus adequately pleads causation, and states a claim for age discrimination under the ADEA.

**B. FMLA**

The FMLA prohibits employers from retaliating against employees for exercising their FMLA rights, such as taking leave for qualifying health issues. 29 U.S.C. § 2615(a); *Freelain v. Village of Oak Park*, 888 F.3d 895, 900–01 (7th Cir. 2018). To adequately state an FLMA retaliation claim, Williams must allege that (1) he exercised his FMLA rights, (2) he experienced an adverse employment action, and (3) there is a causal connection between the two. *Freelain*, 888 F.3d at 901. The Board moves to dismiss Williams's FMLA claim, arguing that (1) he did not experience an adverse employment action, and (2) he fails to suggest a causal link between his FMLA leave and his alleged discharge. Def.'s Mot. at 3–7. The Court has already determined that Williams plausibly experienced an adverse employment action because he adequately pleads constructive discharge. *See supra* Section III.A.1. So the Court turns to the Board's second argument.

Employees may allege circumstantial evidence that raises an inference of causation, such as "suspicious timing, ambiguous statements from which a retaliatory

intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Williams contends that three facts raise a plausible inference of causation here. 1:24-cv-11729, R. 28, Pl.'s Resp. Br. at 4–5. First, he says that when he returned from leave, he was subject to "great scrutiny and animus," and that one time, the police were called to escort him off school property. First Am. Compl. ¶ 28. But without *factual* context, these conclusory, vague allegations provide no connection to Williams's FMLA leave or his constructive discharge. For instance, Williams provides no explanation about why the police were called, what was said, or why he was escorted off the property. Without any details about what happened, the Court cannot conclude that this incident suggests that Williams was treated differently, and ultimately discharged, because he took FMLA leave. Similarly, Williams's "mere conclusory statements" that he was treated with greater scrutiny and animus "do not suffice" to suggest causation. *Iqbal*, 556 U.S. at 678.

Second, Williams alleges that he was "treated differently than those who took a leave." First Am. Compl. ¶ 28. But again, this statement is wholly conclusory. Williams does not further describe these employees and their workplace circumstances, let alone allege how he was treated differently from them. So this allegation does not raise an inference of causation, either.

Third, Williams argues that the temporal proximity between his return from FMLA leave and his constructive discharge suggests a causal connection. Pl.'s Resp.

Br. at 4. "Suspicious timing can sometimes raise an inference of a causal connection, but temporal proximity alone is rarely sufficient to establish causation." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) (cleaned up). And "[t]he inference of causation weakens as the time between the protected [activity] and the adverse action increases …." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (cleaned up). To start, the Court disagrees with Williams that only one month passed between his protected activity and the Board's decision to eliminate his position. Pl.'s Resp. Br. at 4. The relevant timeframe begins not when Williams *returned* from leave, but when he *notified* the Board that he was taking leave. *See Goelzer v. Sheboygan County*, 604 F.3d 987, 996 (7th Cir. 2010) (analyzing causation based on when the employer knew that the employee would take FMLA leave). Thus, around four months passed between when Williams asserted his FMLA rights in February and when he was constructively discharged in June. First Am. Compl. ¶¶ 24, 29. Given the length of time that passed, and that Williams offers no other concrete allegations to suggest he was discharged in retaliation for taking leave, the timing alone cannot raise an inference of causation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Because Williams fails to plausibly suggest that he was discharged because he took FMLA leave, he fails to state an FMLA claim.

### C. Illinois Whistleblower Act

The Illinois Whistleblower Act prohibits employers from taking "retaliatory action against an employee for disclosing … information to a government or law enforcement agency … related to an activity, policy, or practice of the employer, where

the employee has a good faith belief that" the employer's practice "violates a State or federal law, rule or regulation" or "poses a substantial and specific danger to employees, public health, or safety." 740 ILCS 174/15(b). Williams alleges that he was constructively discharged in retaliation for reporting his assault and the inadequate security measures at the basketball game to law enforcement and the Board. First Am. Compl. ¶¶ 51–60.

The Board contends that there is no plausible causal connection between Williams's report and his constructive discharge because Williams does not allege that he told the Board about his police report. Def.'s Mot. at 7–8. But Williams does allege that he reported "inadequate security measures" at the game "to law enforcement authorities and [Chicago Public Schools] administration officials." First Am. Compl. ¶ 72. So even if Williams did not tell the Board about the police report, his disclosure of inadequate security measures to the Board could qualify as protected activity that the Board knew about (because Williams disclosed information to the Board—a government agency—based on his good faith belief that its security practices posed a danger to public safety, *see* 740 ILCS 174/15(b)).

Still, Williams offers only conclusory statements about these events, rather than specific allegations. For example, Williams does not allege *to whom* at the Board he reported the inadequate security measures. *See* First Am. Compl. ¶¶ 16, 72. Without these details, the Court cannot conclude that the same administrators who knew about his disclosure also made the decision to discharge him. Even if the Court knew whom Williams reported to, the timing does not raise an inference of causation. *See*

11

*Kidwell*, 679 F.3d at 966. Williams alleges that he reported the assault and inadequate security measures to school officials in February, which was four months before he was told his position was eliminated. *See* First Am. Compl. ¶¶ 62, 65. Because Williams does not allege concrete facts that suggest causation between his reporting and his constructive discharge, he fails to state a whistleblower claim.

### D. Common Law Retaliatory Discharge

Under Illinois law, "an employer may fire an employee-at-will for any reason or no reason at all," but there is a limited exception that prohibits retaliatory discharge. *Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 492 (Ill. 1998). To successfully plead a common law retaliatory discharge claim, Williams must plausibly allege that "(1) he was discharged in retaliation for his activities; and (2) the discharge is in contravention of a clearly mandated public policy." *Id.* The Board moves to dismiss Williams's claim because (1) he was not fired, but voluntarily resigned; (2) he does not allege that he reported the police report to the Board; and (3) he fails to identify a public policy that his alleged discharge violates. Def.'s Mot. at 8–9. The Court has already dispensed with the first two arguments. *See supra* Sections III.A.1, III.C.

The remaining argument also lacks merit. The Board says that Williams's complaint does not "identify a clear public policy mandate." Def.'s Mot. at 9. But Williams alleges that Illinois has a public policy of "protecting public safety in educational settings." First Am. Compl. ¶ 72. Indeed, it is well-established in the retaliatory-discharge context that Illinois has a public policy "favoring the effective protection of the

12

lives and property of citizens" which prevents employers from firing employees for raising concerns about crime and public safety. *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 879–80 (Ill. 1981). Thus, if Williams was discharged for reporting his assault and/or inadequate security measures at the basketball game, that would contravene clearly mandated public policy. *See id.*

Still, Williams's claim fails for the same reason as his whistleblower claim: he does not allege any facts connecting his constructive discharge to his report to the Board. Because Williams does not allege to whom he reported the security issues, nor any other facts suggesting this disclosure led to his discharge, he fails to plausibly state a claim for retaliatory discharge under Illinois common law.

### E. Equal Protection and Due Process

Williams next alleges that his constructive discharge violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. First Am. Compl. ¶¶ 77–82. The Court agrees with the Board that Williams fails to state plausible constitutional claims for several reasons. *See* Def.'s Mot. at 9–11.

First, Williams alleges that the Board violated the Due Process Clause by eliminating his position without notice or an opportunity for a hearing and appeal. First Am. Compl. ¶¶ 78–79. But to successfully state a procedural due process claim, Williams must have "had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Protected property rights are not created by the Constitution but instead must "stem from an independent source such as state law." *Id.* (cleaned up). Williams alleges that the Board "maintained policies

13

requiring procedural safeguards prior to involuntary termination for employees with nearly two decades of service" like himself. First Am. Compl. ¶ 78. But without describing those policies further, or explaining the particular property right that they created, Williams fails to provide sufficient detail to plausibly establish that those policies created a property interest. *See Price v. Bd. of Educ. of Chi.*, 755 F.3d 605, 611 (7th Cir. 2014). Williams thus fails to state a due-process claim.

Second, Williams alleges that the Board violated the Equal Protection Clause because he was treated differently than other employees for taking FMLA leave and reporting his assault. First Am. Compl. ¶ 80. Williams clarifies (for what it is worth) in his response brief that he is asserting a "class-of-one" equal protection claim; he argues that he was discharged not because he belongs to a class or group of people, but for an irrational reason—his FMLA leave and whistleblowing—which violates the Equal Protection Clause. Pl.'s Resp. Br. at 7. But the Supreme Court has explicitly held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). Because public employees like Williams cannot plead class-of-one equal-protection claims, *id.*, he does not plausibly allege this claim.

Because Williams does not plead an underlying constitutional violation, his *Monell* claims against the Board fail. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). In any event, Williams also fails to plausibly allege *Monell* liability. *See* Def.'s Mot. at 9–10. "A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official

14

policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Here, Williams alleges only that he was discharged by "officials with final policy-making authority within the Board administration responsible for employment decisions" over his school. First Am. Compl. ¶ 81. But because Williams does not specifically allege *who* those officials are, the Court cannot assess whether they had final policy-making authority. Williams thus fails to state a *Monell* claim.

### F. *Monell* Claim for Negligent Hiring, Training, and Supervision

Williams also brings a *Monell* claim for negligent hiring, training, and supervision. First Am. Compl. ¶¶ 83–91. He claims that the Board's failure to properly hire, train, and supervise security personnel was so widespread that it constituted a practice or custom of the Board. *Id.* ¶ 87. And he alleges that the assault against him at his son's basketball game "was a direct consequence" of this practice or custom. *Id.* ¶ 89.

Again, to allege a *Monell* claim, there must be an underlying constitutional right that has been violated. *Swanigan*, 775 F.3d at 962. Williams contends that the Board violated his "right to bodily integrity and safety from foreseeable harm" under the Fourteenth Amendment. First Am. Compl. ¶ 88. But he does not adequately explain how he had a constitutional right to be safe from a non-government assailant. He cites *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189

(1989), for the proposition that "the Due Process Clause protects individuals from state-created dangers." Pl.'s Resp. Br. at 8. Yes, but *DeShaney* says the opposite when it comes to protecting against non-government assailants: in general, the government's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197. Although there is a limited exception for state-created dangers, Williams alleges no facts to suggest that the Board played a part in his assault or did "anything to render him any more vulnerable" to it. *Id.* at 201; *see generally* First Am. Compl. Because Williams does not plausibly allege that the Board's allegedly negligent hiring, training, and supervision of its security personnel violated his constitutional rights, he fails to state a *Monell* claim.

Even if Williams could identify a constitutional right protecting him against poor security practices, he fails to sufficiently allege *how* the Board's security practices were inadequate, nor how such inadequacies caused his injuries. To impose liability under *Monell*, the Board's practice or custom "must be the *moving* force behind the constitutional violation …." *Thomas*, 604 F.3d at 306 (emphasis in original). But all Williams tells us is that he was assaulted at his son's basketball game. First Am. Compl. ¶ 12. He does not explain who assaulted him, how it happened, or how the security personnel at the game failed to protect him. He alleges a list of the Board's security deficiencies, such as the failure to conduct adequate background checks or ensure sufficient staffing levels. *Id.* ¶ 94. But he does not explain how these failures

16

were the "moving force" behind his assault. Thus, Williams does not adequately allege *Monell* liability.

### G. State Law Claim for Negligent Hiring, Training, and Supervision

"Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). To adequately state this claim, Williams must allege that (1) the Board "knew or should have known that an employee had a particular unfitness for his position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the hiring, retention, or failure to supervise; and (3) that this particular unfitness proximately caused" Williams's injury. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017). Additionally, because Williams's assault occurred on public property, *see* First Am. Compl. ¶¶ 11–12, the Local Government and Governmental Employees Tort Immunity Act immunizes the Board from liability unless Williams pleads that its conduct was "willful and wanton," *see* 745 ILCS 10/3-108(a) ("[N]either a local public entity nor a public employee who undertakes to supervise an activity on … public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.").

This claim fails for the same reason as Williams's *Monell* claim: he fails to allege any specific facts about the Board's inadequate security or how it caused his

17

assault. His general allegations that the security personnel were under-trained and under-staffed, First Am. Compl. ¶ 94, do not suggest that the security personnel at his son's basketball game had a "particular unfitness" for their position. Indeed, these allegations do not establish that the Board's practices were negligent, let alone willful and wanton. *See Van Horne*, 705 N.E.2d at 905–06. And again, even if the security staff were unfit, he alleges no particular facts about why the security failed to prevent the assault and thus proximately caused his injury. He fails to state a claim.

### H. Negligent Security

Finally, Williams alleges that the Board's negligent security violates state law. First Am. Compl. ¶¶ 98–105. But the Local Government and Governmental Employees Tort Immunity Act provides absolute immunity from liability for the Board's "failure to provide adequate police protection or service" and "failure to prevent the commission of crimes." 745 ILCS 10/4-102; *see* Def.'s Mot. at 13–14. Williams's only response is that immunity applies to the provision of police protection, not security services provided by school boards. Pl.'s Resp. Br. at 9. But the Act expressly extends immunity to public entities that "contract for private security service[s]." 745 ILCS 10/4-102. And the case Williams cites does not support his contention. *See* Pl.'s Resp. Br. at 9; *Doe v. Village of Arlington Heights*, 782 F.3d 911, 920–22 (7th Cir. 2015) (holding that absolute immunity applies to plaintiff's claims about a negligent police investigation and negligent hiring). Because the Board has absolute immunity against a claim for its failure to provide adequate security services, Williams fails to state this claim.

### I. Punitive Damages

The Board also notes that Williams requests punitive damages, which are not available under the FMLA, the Illinois Whistleblower Act, or Section 1983. *See* Def.'s Mot. at 14. The Board is correct. *See Trahanas v. Nw. Univ.*, 64 F.4th 842, 858 (7th Cir. 2023) ("FMLA damages don't include emotional distress and punitive damages." (cleaned up)); *Brummel v. Grossman*, 121 N.E.3d 970, 998 (Ill. App. Ct. 2018) ("[T]he Whistleblower Act does not provide for punitive damages."); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). And the Board also accurately notes that damages for emotional distress are not available under the FMLA. *See* Def.'s Mot. at 14; *Trahanas*, 64 F.4th at 858. Williams concedes these points. *See* Pl.'s Resp. Br. at 9. So Williams cannot seek those types of damages for those claims.

### IV. Misquotations

It is worth pointing out that there are several wholesale misquotations in Williams's response brief. For example, the brief says that *EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002), contains the following quote: "an employee who resigns following the employer's specific notification of termination should be treated no differently than an employee who is formally terminated." Pl.'s Resp. Br. at 3. But the case contains no such language. Similarly, the brief provides the following quote, purportedly from *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015): "not every governmental activity that might incidentally prevent crime constitutes 'police protection service' within the meaning of section 4-102.'" Pl.'s

19

Resp. Br. at 9. But this quote does not exist. This kind of totally made-up quotations might very well be hallucinated quotations from generative artificial intelligence. What's more, the brief severely misrepresents the holdings of several other cases, well beyond just an aggressive reading of a holding. For instance, the brief cites *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 598 (2008), to support Williams's "class-of-one" equal-protection claim. Pl.'s Resp. Br. at 7. But *Enquist* held that public employees like Williams *cannot* bring class-of-one claims.

Perhaps there are reasonable explanations for how these problems came to be. But because these issues appear throughout the response brief, the Court requires Williams's counsel to provide a Statement of Explanation to explain (1) how the three identified problems happened (the two non-existent quotations and the citation to *Engquist*); and (2) whether the source of the problems caused other similar problems in the response brief. The Statement is due by April 13, 2026.

## V. Conclusion

The Board's motion to dismiss Williams's ADEA claim, 1:25-cv-06644, R. 19, is denied. But the motion to dismiss Williams's other claims, 1:24-cv-11729, R. 25, is granted. Those claims are dismissed without prejudice. If Williams chooses to re-plead, he must file a Second Amended Complaint with all his claims in the consolidated case, the docket in 1:24-cv-11729, by April 15, 2026. Meanwhile, discovery on

20

the age-discrimination claim must begin and the parties shall file a proposed discovery schedule on April 10, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

21